# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **REBECCA TRACEY** and **GEORGE TRACEY** Plaintiffs, v. **FREETIME, INC. d/b/a WHEEL FUN RENTALS** and **WHEEL FUN RENTALS** Defendants. | : : : : : : : : : : : : : | **CIVIL ACTION** No.: 18-cv-2923 |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                 **MARCH 1, 2019**

Presently before the Court is a Motion for Summary Judgment of Defendant, Freetime, Inc. d/b/a Wheel Fun Rentals (hereinafter referred to as "Wheel Fun" or "Defendants").

## I.     FACTUAL BACKGROUND

This is an action to recover damages by Plaintiff Rebecca Tracey for personal injuries, and to recover damages for loss of consortium by Plaintiff George Tracey. The action arises from an incident that occurred on October 16, 2016, when Plaintiff Rebecca Tracey and her sister Laura Lee Hoffman took part in a Segway-mounted tour of Philadelphia operated by the Defendants, and guided by the Defendants' employee, Josh Hartman. Complaint at ¶¶ 4-6. According to the Complaint, Plaintiff's Segway experienced mechanical problems throughout the tour, of which she twice made Josh Hartman aware. Complaint at ¶¶ 6-8. As Plaintiff's tour group began descending a ramp, the Segway on which she was riding failed to

respond to her attempts to break, causing her to strike the Segway of the rider in front of her, and fall to the ground sustaining several injuries. Complaint at ¶¶ 8-9.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2205, 91 L.Ed.2d 202 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record that] it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 47 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court [ ] that there is an absence of evidence to support the non-moving party's case." Id. At 325, 106 S.Ct. 2548. After the moving party has met its initial burden the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue off material fact exists for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That is, summary judgment is appropriate if the nonmoving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct.2548.

2

"In evaluating the evidence, we take the facts in the light most favorable to the nonmoving party … and draw all reasonable inferences in [their] favor." Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 680 (3d Cir. 2003) (internal quotation omitted). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp.2d 402, 408 (E.D. Pa. 2000). Indeed, evidence introduced to defeat or support a motion for summary judgment must be capable of being admissible at trial. Callahan v. AEV, Inc., 182 F. 3d 237, 252 n.11 (3d Cir. 1999) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F. 2d 1224, 1234 n.9 (3d Cir. 1993) ).

## III.     DISCUSSION

Plaintiff in her deposition testified that she felt the Segway begin vibrating about 20 -25 minutes into the tour, that she told Mr. Harman about it, and he said he could fix it if he had an "Allen key", but that it could wait until they ended the tour. Plaintiff's deposition transcript ¶¶ 29-31. Because Mr. Hartman showed no concern about the vibration, Plaintiff assumed it was safe and continued with the tour. However, as the tour continued Plaintiff noticed that the Segways he was riding didn't feel as "tight" as when they had begun the tour, and that it was reacting more sluggishly when she wanted to maneuver it. *Id* at ¶ 41. This sluggishness worsened during the course of the tour, and even as Plaintiff became more comfortable with the operation of the Segway, the Segway itself became more difficult to control. *Id* at ¶ 84, lines 14-25. The vibration of the Segway became more intense as well, and Plaintiff told Mr. Hartman for a second time about the issues she was experiencing with her Segway. *Id* at ¶¶ 38-40. Mr. Hartman came over and felt the Segway, acknowledging that he felt what she was referring to,

but again did and said nothing in response. *Id.* Mr. Hartman again expressed no concern about continuing to use the Segway, and because of this Plaintiff continued on the tour.

Plaintiff's sister, Laura Lee Hoffman, in her deposition stated that Mr. Hartman responded to Rebecca Tracey's complaints by saying that he could fix Plaintiff's Segway if he had an "Allen wrench", and that it seemed he knew what was wrong with the Segway. Hoffman Deposition at p. 17, lines 4-8.

As the tour group descended a ramp to the Schuylkill Banks River Trail, when Plaintiff was attempting to slow her Segway which was not responding to her efforts, Plaintiff's right tire made contact with the left tire of another Segway causing Plaintiff's Segway to lose its balance, and she fell to the ground. Plaintiff's Deposition at pp. 46-49. In her deposition Plaintiff stated that she was trying to break the Segway throughout the process, but it was not slowing down despite her efforts. *Id* at ¶ 57. As a result of Plaintiff's fall, she suffered injuries including a fibular head fracture of the left knee, multiple facial fractures, and an injury to the left thumb requiring a left trigger thumb release surgery. Complaint at p. 5.

The User Manual for the Segway Personal Transporter ("PT") on which Plaintiff was riding, notes on p. 19 that the "LeanSteer Frame," (the pole extending from the base of the handle bars), "must be properly attached and secured." User Manual p. 21. "Failure to properly assemble the LeanSteer Frame and/or maintain torque on the fasteners could lead to an unexpected change in steering and result in serious injury and/or damage to your Segway PT from loss of control, collisions, and fall." *Id.* The User Manual additionally warns of a feature called the "Stick Shake Warning." The relevant excerpt reads:

> "One of the ways that the PT notifies you when you are at risk of falling is by shaking the Handlebar and making growling noises. This is called the Stick Shake Warning . . . If the Stick Shake Warning occurs while riding, slow down. If the Stick Shake

4

> Warning persists, come to a stop and safely step off the PT. Do not attempt to ride again until the condition that caused the Stick Shake Warning has been identified and corrected. If the Stick Shake Warning occurs while you are stopped or stuck, step off immediately and do not attempt to ride again until:
> - You are clear of all obstacles and slopes.
> - You are certain that you did not experience a Safety Shutdown."

*Id* at ¶ 56.

Defendants admit that they received the user manual for the Segway Personal Transporter on which plaintiff was riding. Response to Request for Admission number 1. Defendants also admit that all tour guide employees were provided with a copy of the user manual and required to pass a written test based on the information provided in the manual. Response to Request for Admission number 2.

Prior to Plaintiff Rebecca Tracey starting the Segway tour she signed a "Release and Indemnity Agreement" by which she agreed to assume the risk of harm from falling while on the Segway tour. See exhibit C attached to defendants' Motion for Summary Judgment *(Document #11)*. The agreement also contains a provision that it would be governed by the laws of the state of California. At oral argument on this motion, the parties agreed that the release and indemnity agreement was only effective to release the defendants from ordinary negligence, not gross negligence or reckless conduct. The parties also agreed that there was no practical difference between the laws of California and Pennsylvania with respect to the definition of recklessness and gross negligence.

As Defendants have pointed out, under California law, gross negligence or recklessness "requires a want of even scant care or an extreme departure from the ordinary standard of conduct." *R.H. v. Los Gatos Union Sch. Dist.*, 33 F.Supp.3d 1138, 1169 (N.D. Cal. 2014). Under Pennsylvania law, recklessness requires "conscious action or inaction which creates a

substantial risk of harm to others, whereas negligence suggests unconscious inadvertence."

*Feleccia v. Lackawanna College*, 156 A.3d 1200, 1210-11 (Pa. Super. 2017).

Based upon Rebecca Tracey's specific complaints made to Mr. Hartman and upon his heightened knowledge of Segways learned from a study of the Segway User Manual a reasonable jury could find that Mr. Hartman's conduct was either reckless or grossly negligent. We therefore enter the following Order.